UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| CURTIS FIREBAUGH,<br><br>                     Plaintiff,<br>v.<br><br>THE UNITED STATES OF AMERICA,<br>BRIAN BERTOLINI, an individual,<br>TIM VEDDER, an individual,<br>And DOES I-X, inclusive<br><br>                     Defendants. | Case No. 3:12-cv-00242-MMD-WGC<br><br>ORDER GRANTING PLAINTFF'S<br>MOTION FOR DEFAULT JUDGMENT |

**I.    SUMMARY**

Before the Court is Plaintiff's Motion for Default Judgment ("Motion"). (Dkt. no. 52.) Defendants Brian Bertolini and Tim Vedder have not responded to the Motion. For the reasons stated below, the Motion is granted.

**II.   BACKGROUND**

**A.    Factual Background**

Plaintiff was fired from Bertolini Trucking, a commercial motor carrier, in January 2008. (Dkt. no. 1 ¶ 16.) Plaintiff alleges that between November 2007 and January 2008, he and another driver refused to haul one of Bertolini Trucking's trailers because of an unsafe welded leaf spring. (*Id.* ¶ 11.)

On November 29, 2007, Vedder, Bertolini Trucking's manager, advised Plaintiff that he was to take a drug test in Elko, Nevada. Vedder knew, however, that if Plaintiff drove to the testing facility that day, he would exceed his service hours. (*Id.* ¶ 13.)

Rather than exceeding his service hours, Plaintiff took the drug test the next day, on November 30, 2007. (*Id.* ¶ 14.) The test was negative. (*Id.* ¶ 15.)

In January 2008, Bertolini Trucking's management told Plaintiff that he would be fired if he continued to refuse to pull the unsafe trailer. (*Id.* ¶ 17.) Plaintiff refused and threatened to report Bertolini Trucking's use of the unsafe trailer. (*Id.*) He was fired in January 2008, about five weeks after he took his drug test. (*Id.* ¶ 16) Plaintiff subsequently filed a complaint with the United States Department of Labor/Occupational Safety and Health Administration ("OSHA"), and with the United States Department of Transportation ("USDOT"). (*Id.*) Both USDOT and OSHA investigated the termination.

USDOT conducted its investigation in March 2008, and concluded that Bertolini Trucking appropriately terminated Plaintiff for refusing to take the drug test on November 29, 2007. (*Id.* ¶¶ 20–21.) USDOT did not confirm whether the welded leaf spring was unsafe, or whether Bertolini Trucking had been using the trailer. (*Id.*) Plaintiff contends that Bertolini and Vedder referred to USDOT's conclusions in advising prospective employers that Plaintiff had been fired for refusing to take a drug test. (*Id.* ¶ 27.)

OSHA completed its investigation in May 2010, concluding that Plaintiff was terminated because he had threatened to report Bertolini Trucking for using the unsafe trailer. (*Id.* ¶ 28.) OSHA further concluded that Bertolini and Vedder tried to damage Plaintiff's reputation and ability to find work by stating that Plaintiff had failed the drug test. (*Id.*)

Plaintiff alleges that as a result of Bertolini's and Vedder's actions, he was unable to obtain comparable employment between 2008 and 2012, and suffered lost wages and was forced to liquidate his assets in the amount of $208,641.00. (*Id.* ¶ 30.) Plaintiff brought a negligence claim against USDOT and defamation claims against Bertolini and Vedder. (*Id.* at 5-7.)

**B.     Procedural History**

Plaintiff filed his Complaint against USDOT, Bertolini, and Vedder on May 5, 2012, and summons were issued to all three defendants on July 3, 2012. (Dkt. nos. 6,

7.) USDOT and Bertolini accepted service later that month, but Vedder did not. (*See* dkt. nos. 8, 9.) Plaintiff received multiple extensions of time to locate and serve Vedder. Plaintiff attempted to serve Vedder by personal service or by mail at his two last-known addresses, which were in California and Nebraska. (Dkt. nos. 32, 35, 36.) After those attempts failed, the Court granted Plaintiff leave to serve Vedder by publication. (Dkt. no. 33.) Plaintiff published summonses in two newspapers in Nebraska and California between April and May 2013. (Dkt. nos. 39, 40, 41.)

In the meantime, USDOT filed a motion to dismiss (dkt. no. 21), which the Court granted. (Dkt. no. 46.) Neither Bertolini nor Vedder, however, answered the Complaint or otherwise appeared. Plaintiff subsequently moved for an entry of default against them. (Dkt. no. 48.) On August 4, 2014, the Clerk entered default. (Dkt. no. 49.)

Plaintiff now moves for default judgment against Bertolini and Vedder, seeking $200,972.12 in damages, punitive damages in an amount to be determined by the Court, and costs totaling $1,427.15. (Dkt. no. 52 at 6.)

## III.  LEGAL STANDARD

Obtaining a default judgment is a two-step process governed by Rule 55 of the Federal Rules of Civil Procedure. *Eitel v. McCool,* 782 F.2d 1470, 1471 (9th Cir. 1986). First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Second, after the clerk enters default, a party must seek entry of default judgment under Rule 55(b).

Upon entry of default, the court takes the factual allegations in the non-defaulting party's complaint as true, except for allegations regarding damages. *TeleVideo Sys., Inc. v. Heidenthal,* 826 F.2d 915, 917–18 (9th Cir. 1987) (per curiam) (quoting *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)). But the "entry of default does not entitle the non-defaulting party to a default judgment as a matter of right." *Warner Bros. Entm't Inc. v. Caridi,* 346 F. Supp. 2d 1068, 1071 (C.D. Cal. 2004) (quoting *Valley Oak Credit Union v. Villegas* (*In re Villegas*), 132 B.R. 742, 746 n.5 (B.A.P. 9th Cir.))

(alteration omitted). Instead, whether a court will grant a default judgment is in the court's discretion. *Id.*

The Ninth Circuit has identified the following factors as relevant to the exercise of a court's discretion in determining whether to grant default judgment: (1) the possibility of prejudice to the plaintiff, (2) the merits of the plaintiff's substantive claims, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to the excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel*, 782 F.2d at 1471–72.

## IV. DISCUSSION

### A. Service of Process

As a preliminary matter, the Court finds that both Bertolini and Vedder were afforded adequate service of process.[1] Rule 4(e) provides that an individual within a judicial district of the United States may be served by delivering a copy of the summons and complaint to the individual personally, or by following state law where the district court is located, among other forms of service. Fed. R. Civ. P. 4(e)(1), (e)(2)(A). Here, Bertolini was personally served and thus provided with adequate service of process.

The Nevada Rules of Civil Procedure provide that when a person resides outside of the state, has left the state, or "cannot, after due diligence, be found within the state," a court may grant an order allowing service to be made by publication of summons. Nev. R. Civ. P. 4(e)(1)(i). "[D]ue diligence is measured by the qualitative efforts of a specific plaintiff seeking to locate and serve a specific defendant." *Abreu v. Gilmer*, 985 P.2d 746, 749 (Nev. 1999). Here, after making numerous attempts to locate and serve

---

[1]This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332. For the purposes of diversity jurisdiction, "diversity of citizenship is assessed at the time the action is filed." *Freeport-McMoRan, Inc. v. K N Energy Inc.*, 498 U.S. 426, 428 (1991) (per curiam). At the time this lawsuit was filed, Plaintiff was a citizen of Nevada, Bertolini was a citizen of California, and Vedder was a citizen of either California or Nebraska. The Complaint, moreover, requested more than $200,000 in damages, which exceeds the $75,000 amount-in-controversy threshold.

4

Vedder, Plaintiff was granted leave to publish the summons. (Dkt. no. 33.) Plaintiff subsequently published the summons in the two last-known locations of Vedder, provided proof of the publications, and mailed a copy of the summons and complaint to Vedder's last-known addresses. (Dkt. nos. 35, 36, 39, 40, 41.) Plaintiff displayed due diligence in attempting to locate and serve Vedder. Plaintiff therefore provided Vedder with adequate service of process.

### B.   Procedural Requirements

Plaintiff has satisfied the procedural requirements for default judgment. Pursuant to Rule 55(a), the Clerk properly entered a default against Bertolini and Vedder. Because neither Bertolini nor Vedder has answered or otherwise responded to the Complaint, the notice requirement of Rule 55(b)(2) is not implicated. Thus, there is no procedural impediment to entering a default judgment.

### C.   *Eitel* Factors

#### 1.   Possibility of Prejudice

The first *Eitel* factor "considers whether the plaintiff will suffer prejudice if default judgment is not entered." *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (S.D. Cal. 2002). Bertolini and Vedder have not made an appearance, or answered or otherwise responded to the Complaint. If Plaintiff's Motion is not granted, then it is unlikely that Plaintiff will have another means for recovery. Thus, there is a possibility of prejudice to Plaintiff. This factor weighs in favor of default judgment.

#### 2.   Substantive Merits and Sufficiency of the Complaint

The second and third *Eitel* factors consider whether the complaint sufficiently states a claim for relief pursuant to the "liberal pleading standards embodied in Rule 8." *Danning v. Lavine*, 572 F.2d. 1386, 1389 (9th Cir. 1978); *see* Fed. R. Civ. P. 8.

Here, Plaintiff asserts defamation against Bertolini and Vedder. Under Nevada law, a *prima facie* case of defamation is established if the plaintiff alleges: "(1) a false and defamatory statement by the defendant concerning the plaintiff; (2) an unprivileged publication to a third person; (3) fault, amounting to at least negligence; and (4) actual or

presumed damages." *Pacquiao v. Mayweather*, 803 F. Supp. 2d 1208, 1211 (D. Nev. 2011) (citing *Wynn v. Smith*, 16 P.3d 424, 427 (2001)). "If the defamation tends to injure the plaintiff in his or her business or profession, it is deemed defamation *per se*, and damages will be presumed." *Chowdhry v. NLVH, Inc.*, 851 P.2d 459, 462 (Nev. 1993). The determination of whether a statement is defamatory is a question of law. *Branda v. Sanford*, 637 P.2d 1223, 1225–26 (Nev. 1981). In making that determination, the statement must be "reviewed in [its] entirety and in context." *Chowdhry*, 851 P.2d at 463.

Plaintiff alleges that Bertolini and Vedder falsely advised prospective employers that Plaintiff was terminated because he refused to take a drug test. (Dkt. no. 1 ¶ 27.) They also relayed findings issued by USDOT, which had concluded that Plaintiff was properly fired because of the drug test. (*Id.* ¶ 21.) Plaintiff asserts that Bertolini and Vedder knew that he could not, in fact, take the drug test at the requested time because he would have exceeded his service hours for that day. (*Id.* ¶ 13.) He instead took the drug test the next day; the test produced negative results. (*Id.* ¶¶ 14-15.) He continued to drive for Bertolini Trucking for approximately five more weeks before he was terminated. (*Id.* ¶ 16.)

Plaintiff contends that the true reason for his termination was his refusal to drive a trailer that had an unsafe welded leaf spring, and his threat to report Bertolini Trucking's use of the trailer. (*Id.* ¶¶ 27–29, 37, 41.) Thus, even in light of USDOT's findings, Plaintiff argues that Bertolini's and Vedder's statements to prospective employers were false. To corroborate these allegations, Plaintiff points to OSHA's finding that Plaintiff was fired because he threatened to report the unsafe trailer. (*Id.* ¶ 28.) OSHA further found that Bertolini and Vedder attempted to damage Plaintiff's reputation and his ability to find replacement employment by suggesting that Plaintiff had failed the drug test. (*Id.* ¶ 28.)

In taking the factual allegations of Plaintiff's complaint as true and in their entirety, the Court finds that Plaintiff has sufficiently stated a claim for defamation *per se* against Bertolini and Vedder. That Plaintiff refused to take a drug test is a statement susceptible

///

to a false, defamatory meaning that has a tendency to injure Plaintiff in his profession. Therefore, the second and third *Eitel* factors weigh in favor of default judgment.

### 3. Sum of Money at Stake

In assessing the fourth factor, the Court considers "the amount of money requested in relation to the seriousness of the defendant's conduct, whether large sums of money are involved, and whether 'the recovery sought is proportional to the harm caused by [the] defendant's conduct.'" *Curtis v. Illumination Arts, Inc.*, 33 F. Supp. 3d 1200, 1212 (W.D. Wash. 2014) (quoting *Landstar Ranger, Inc. v. Parth Enters., Inc.*, 725 F. Supp. 2d 916, 921 (N.D. Cal. 2010).

In the context of defamation *per se*, "[d]amages are presumed 'because of the impossibility of affixing an exact monetary amount for present and future injury to the plaintiff's reputation, wounded feelings and humiliation, [or] loss of business." *K-Mart Corp. v. Washington*, 866 P.2d 274, 284 (Nev. 1993) (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 373 n.4 (1974) (White, J., dissenting)), *abrogated on other grounds by Pope v. Motel 6*, 114 P.3d 277, 283 (Nev. 2005). A factfinder may "assess damages considered to be the natural and probable consequences of the defamatory words on proof of the defamation alone." *Id.* But a plaintiff must offer competent evidence to support the damages sought. *Bongiovi v. Sullivan*, 138 P.3d 433, 448 (Nev. 2006). To determine whether a damages award is excessive, "courts look to how offensive the slanderous remark was, whether it was believed, how widely it was disseminated, and the plaintiff's prominence and professional standing in the community." *Id.*

Plaintiff seeks $200,972.12, costs in the sum of $1,427.15, and punitive damages in an amount to be determined by the Court.[2] Plaintiff asserts that he "was told by some of [his] prospective employers that [he] was not hired because Brian Bertolini and Tim Vedder advised them [that he had] failed to take a drug test." (Dkt. no. 53 ¶ 9.) As a result, Plaintiff claims that he was unable to obtain comparable replacement employment

---

[2]In the Complaint, Plaintiff sought $1,000,000 in punitive damages. (Dkt. no. 1 at 7.)

7

from 2008 until 2012, which caused Plaintiff to lose wages and forced him to liquidate his assets. (*Id.* ¶ 10; dkt. no. 1 ¶ 30.)

In 2009, OSHA submitted, on Plaintiff's behalf, a demand for payment of lost wages and compensatory damages to Bertolini Trucking's bankruptcy proceedings. (*See* dkt. no. 52-10.) That claim totaled $99,357.82, but Plaintiff received a pro rata share of $4,544.69 from the estate. (*See id.* at 4-12.) Plaintiff reasserts the remaining balance in this action, along with more than $100,000 in other income and assets he lost after OSHA's submission to the bankruptcy proceeding. (Dkt. no. 53 at 2-3.)

Although Plaintiff has alleged that he incurred these damages after Bertolini Trucking fired him, it is not clear that the requested damages are the "natural and probable consequences" of Bertolini's and Vedder's defamatory statements. *K-Mart Corp.*, 866 P.2d at 284. As an example of Bertolini's and Vedder's defamatory statements, Plaintiff offers a potential employer's information request form that is dated March 3, 2008, and on which Vedder noted that Plaintiff had refused to take a drug test. (Dkt. no. 52-6 at 2.) But Plaintiff is seeking compensation for certain damages that existed upon his termination — such as back pay beginning on January 9, 2008 — as opposed to damages to compensate Plaintiff for Bertolini's and Vedder's defamatory statements. (*See* dkt. no. 52-10 at 8.) Furthermore, Plaintiff seeks damages for defamation between 2011 and 2012, after OSHA took steps to resolve some of the false records giving rise to Plaintiff's defamation claim. (*See* dkt. no. 52-8 at 2-4.) Thus, Plaintiff has not shown that the damages sought are proportional to his injuries.

Finally, to make out a claim for punitive damages, Plaintiff must show "by clear and convincing evidence that the defendant[s] [are] 'guilty of oppression, fraud or malice, express or implied." *Bongiovi*, 138 P.3d at 450-51 (quoting NRS § 42.005). Plaintiff claims that he is entitled to punitive damages because Bertolini and Vedder were malicious, fraudulent, or oppressive in misrepresenting the reason for his termination. (*See* dkt. no. 1 ¶¶ 39, 43.) Even accepting as true Plaintiff's factual allegation that Bertolini and Vedder knowingly made false statements about his termination (*see id.*

8

¶ 13), Plaintiff has not shown by clear and convincing evidence that he is entitled to punitive damages.

Because Plaintiff's damages appear to be disproportionate to the harm suffered, this *Eitel* factor weighs against default judgment.

### 4. Possible Dispute of Material Facts

The fifth factor considers the possibility of dispute regarding any material facts in the case. *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177. "Upon entry of default, all well-pleaded facts in the complaint are taken as true, except those relating to damages." *Id.* Because Bertolini and Vedder have failed to appear, the Court accepts Plaintiff's well-pleaded factual allegations as true. There is accordingly little possibility of dispute over the material facts, and this factor weighs in favor of default judgment.

### 5. Excusable Neglect

This factor "considers the possibility that the default resulted from excusable neglect." *Id.* As noted above, both Bertolini and Vedder were properly served with the pursuant to Rule 4(e) of the Federal Rules of Civil Procedure and Rule 4(e)(1)(i) of the Nevada Rules of Civil Procedure. Bertolini was personally served roughly two years before the Clerk entered default, and Vedder was served by publication over a year before the Clerk entered default. (Dkt. nos. 9, 39, 40, 41, 49.) Given the time period during which they had notice of the action against them, it is unlikely that the Bertolini and Vedder failed to respond due to excusable neglect. This factor therefore weighs in favor of default judgment.

### 6. Decision on the Merits

The seventh *Eitel* factor reflects a strong preference for deciding cases on their merits whenever reasonably possible. *See Eitel*, 782 F.2d at 1472. This preference, however, is not dispositive when standing alone. *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177 (citing *Kloepping v. Fireman's Fund*, No. C 94-2684 TEH, 1996 WL 75314, at *3 (N.D. Cal. Feb. 13, 1996)). Although a decision on the merits is desirable, Bertolini's and Vedder's failure to appear and to respond to the Complaint renders such a decision

"impractical, if not impossible." *Id.* Thus, this factor will not preclude the Court from entering default judgment against Bertolini and Vedder.

Taken together, the *Eitel* factors weigh in favor of default judgment. The Court will therefore grant default judgment, but will defer awarding damages pending a supplemental affidavit from Plaintiff.

**D.    Damages**

As discussed above, Plaintiff's requested damages — both compensatory and punitive — appear to be disproportionate to the harm he alleges. Given Plaintiff's defamation *per se* claim, the Court can fashion damages to compensate Plaintiff for the probable consequences of Bertolini's and Vedder's defamatory statements. *K-Mart Corp.*, 866 P.2d at 284. But Plaintiff appears to request damages that are related to his termination, rather than the repercussions of Bertolini's and Vedder's defamatory statements. Accordingly, before the Court can fashion damages, Plaintiff must file a supplemental affidavit that outlines the damages he incurred as a result of the defamatory statements.

**V.    CONCLUSION**

It is therefore ordered that Plaintiff Curtis Firebaugh's Motion for Default Judgment (dkt. no. 52) is granted.

It is further ordered that before the Court awards damages, Plaintiff must file a supplemental affidavit that outlines the evidence supporting his request for costs and damages, both compensatory and punitive. The supplemental affidavit must be filed within thirty (30) days.

DATED THIS 3rd day of September 2015.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE