UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| CURTIS FIREBAUGH, | Case No. 3:12-cv-00242-MMD-WGC |
|---|---|
| Plaintiff, | ORDER REGARDING DAMAGES |
| v. | |
| THE UNITED STATES OF AMERICA, BRIAN BERTOLINI, an individual, TIM VEDDER, an individual, And DOES I-X, inclusive | |
| Defendants. | |

On September 3, 2015, the Court granted Plaintiff's motion for default judgment ("Motion") and ordered Plaintiff to file a supplemental affidavit about his damages, which he submitted on September 29, 2015. (Dkt. no. 54 at 10; dkt. no. 55.) In his Motion, Plaintiff sought $200,972.12 in compensatory damages, $1,427.15 in costs, and punitive damages. (Dkt. no. 52 at 6.) Plaintiff filed an affidavit with his Motion that explained the bases for his damages calculation, including lost income between 2009 and 2010, and property that Plaintiff sold after losing his position with Bertolini Trucking. (Dkt. no. 53.) The Court found that Plaintiff seemed to be seeking damages caused by his termination instead of damages arising from the defamation claim for which the Court granted default judgment. The Court sought more clarity from Plaintiff before awarding damages.

In his supplemental affidavit, Plaintiff contends that he seeks damages caused by his "inability to find comparable replacement employment" after Defendants Bertolini and Vedder made defamatory statements about his willingness to take a required drug test. (Dkt. no. 55 at 1-2.) As the Court noted in granting the Motion, Plaintiff established a

defamation *per se* claim against Bertolini and Vedder, whose statements about Plaintiff's compliance with the drug test requirement "tend[ed] to injure [him] in his . . . trade, business, profession or office." *Bongiovi v. Sullivan*, 138 P.3d 433, 448 (Nev. 2006) (quoting *Nev. Indep. Broad. Corp. v. Allen*, 664 P.2d 337, 341 (Nev. 1983)). Plaintiff is therefore "entitled to presumed, general damages," *id.*, which compensate for the "natural and probable consequences of the defamatory words." *K-Mart Corp. v. Washington*, 866 P.2d 274, 284 (Nev. 1993), *abrogated on other grounds by Pope v. Motel 6*, 114 P.3d 277, 283 (Nev. 2005). "Damages for [defamation] per se include harm to the reputation of the person defamed, or, absent proof of such harm, 'for the harm which normally results from such a defamation.'" *Id.* (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 372 (1974) (White, J., dissenting)). But "an award of presumed general damages must still be supported by competent evidence," even if that evidence does not "'assign[] an actual dollar value to the injury.'" *Bongiovi*, 138 P.3d at 448 (quoting *Nev. Indep. Broad. Corp.*, 664 P.2d at 347).

Plaintiff's supplemental affidavit seeks $214,428.92 in damages, an increase from the $200,972.12 damages award that he initially sought.[1] (Dkt. no. 55 at 10.) Although Plaintiff need not prove his damages because he is entitled to an award that compensates him for his reputational harm, the Court finds that a lower damages award is appropriate. *See Bongiovi*, 138 P.3d at 448 ("[I]n reviewing awards for excessiveness, courts look to how offensive the slanderous remark was, whether it was believed, how widely it was disseminated, and the plaintiff's prominence and professional standing in the community."). Plaintiff asserts that in the months following his January 2008 termination, several employers refused to hire him because Bertolini and Vedder advised them that Plaintiff had refused to take a drug test. (Dkt. no. 55 at 8.) Although Plaintiff secured some employment that year, he claims that his income fell far below what he

///

---

[1] Plaintiff clarifies, however, that he would accept the $200,972.12 that he initially requested, or another award that this Court finds appropriate. (Dkt. no. 55 at 10.)

would have earned absent Bertolini's and Vedder's defamatory statements. (*Id.* at 8-9.) Plaintiff seeks damages for lost income between 2008 and 2012. (*Id.*)

On May 7, 2010, the U.S. Department of Labor ("DOL") found that Bertolini Trucking, Inc. improperly fired Plaintiff for refusing to drive with unsafe equipment and threatening to report the company for using such equipment. (Dkt. no. 52-7 at 2-4.) In a letter addressed to Bertolini, the DOL issued a preliminary order requiring Bertolini to pay Plaintiff back wages and to "expunge any adverse references from [Plaintiff's] personnel records relating to the discharge and not make any negative references relating to the discharge in any future requests for employment references." (*Id.* at 5.) The DOL further ordered Bertolini to send letters to three drug testing centers and consultants clarifying that Plaintiff never refused to take his drug test. (*Id.* at 5-6.) But Bertolini failed to send those letters before Bertolini Trucking ceased to operate. Accordingly, on January 4, 2011, the DOL mailed the letters to the specified recipients. (Dkt. no. 52-8 at 2-4.)

Plaintiff suggests that Bertolini's and Vedder's defamatory statements continued to affect his professional reputation even after the DOL took action to correct Plaintiff's records in January 2011. (*See* dkt. no. 55 at 9 (describing lost income resulting from the defamatory statements between 2011 and 2012).) The Court, however, finds that an appropriate damages award would compensate Plaintiff for reputational harm between January 2008 and January 2011, when the DOL sent letters correcting the defamatory statements. Plaintiff represents that he would have earned an additional $128,253.98 during that period if Bertolini and Vedder had not made defamatory statements about his drug test. (*Id.* at 8-9.) The Court will award Plaintiff $128,253.98 in compensatory damages based on the competent evidence that Plaintiff has offered about his inability to find comparable work due to Bertolini's and Vedder's false statements,[2] the severity of

---

[2] In his supplemental affidavit, Plaintiff states that he enclosed copies of tax forms demonstrating his income between 2008 and 2012. (Dkt. no. 55 at 9.) Those tax forms were not included with, or attached to, the supplemental affidavit. But Plaintiff did file several W-2 forms with his Motion (dkt. no. 52-19), which indicate that Plaintiff received substantially less income in 2008, 2009, and 2010 than he would have received in a position comparable to his job at Bertolini Trucking. The income reported in those W-2 *(fn. cont...)*

3

1  those statements (which indicate that Plaintiff refused to comply with mandatory drug
2  testing), Plaintiff's assertion that certain potential employers believed the statements,
3  and their resulting impact on Plaintiff's reputation in the truck-driving community. *See*
4  *Bongiovi*, 138 P.3d at 448.

5  Plaintiff also requests punitive damages, which are "designed not to compensate
6  the plaintiff for harm suffered but, instead, to punish and deter the defendant's culpable
7  conduct." *Id.* at 450. In Nevada, punitive damages "may be awarded when the plaintiff
8  proves by clear and convincing evidence that the defendant is 'guilty of oppression,
9  fraud or malice, express or implied.'" *Id.* at 450-51 (quoting NRS § 42.005(1)). Most
10 relevant here, fraud is an "intentional misrepresentation, deception or concealment of a
11 material fact known to the person with the intent to deprive another person of his or her
12 rights or property or to otherwise injure another person." NRS § 42.001(2). Plaintiff has
13 offered evidence of Bertolini's and Vedder's intentional misrepresentation, including a
14 document that Vedder authored stating that Plaintiff had refused to take a drug test, and
15 factual findings issued by the DOL indicating that Bertolini and Vedder knew that Plaintiff
16 had, in fact, complied with the drug test requirement. (*See* dkt. no. 52-6 at 2; dkt. no. 52-
17 7 at 3-4.) Accordingly, the Court finds that an award of punitive damages is appropriate.

18 In fashioning a punitive damages award that complies with the Due Process
19 Clause of the Fourteenth Amendment, courts consider three factors: (1) "the degree of
20 reprehensibility of the defendant's conduct," (2) the relationship between the plaintiff's
21 actual harm and the punitive damages award, and (3) a comparison between the
22 punitive damages award and other civil or criminal penalties that could be imposed.
23 *Bongiovi*, 138 P.3d at 452 (quoting *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 575
24 (1996)). The first factor is the most important; courts examine whether: the harm at issue

---

*(…fn. cont.)*
forms is less than the income that Plaintiff describes in his supplemental affidavit. (*See* dkt. no. 52-19; dkt. no. 55 at 8-9.) Plaintiff has thus offered verifiable evidence that his income in 2008, 2009, and 2010 fell far below the income he would expect absent Bertolini's and Vedder's defamatory statements.

4

is physical or economic; the defendant's conduct demonstrates an indifference to, or reckless disregard of, others; the plaintiff is financially vulnerable; the conduct was isolated or repeated; and "the harm was the result of intentional malice, trickery, or deceit, or mere accident." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003). The harm here — Plaintiff's inability to find comparable work — was economic in nature. Although Plaintiff took an economic hit due to Bertolini's and Vedder's defamatory statements, he concedes that he was able to find part-time work through personal contacts between 2008 and 2012. (Dkt. no. 55 at 9.) Bertolini and Vedder, however, told multiple prospective employers that Plaintiff had refused to take a drug test. And Plaintiff has offered evidence that Bertolini and Vedder made those statements knowing that Plaintiff had complied with the drug test requirement. Taken together, the Court finds that these factors weigh in favor of a punitive damages award of $5,000.[3]

It is therefore ordered that Plaintiff is entitled to a compensatory damages award of $128,253.98, and a punitive damages award of $5,000. The Clerk is directed to enter judgment against Defendants Vedder and Bertolini in the amount of $133,253.98.

DATED THIS 23rd day of December 2015.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE

---

[3] Plaintiff initially requested a punitive damages award of $1,000,000. (Dkt. no. 1 at 7.) That award is disproportionate to the harm suffered and the reprehensibility of Bertolini's and Vedder's conduct.

5